**13-4493**

IN THE

# United States Court of Appeals

## FOR THE THIRD CIRCUIT

❖

CHRISTOPHER TEMPLIN; VIOLA HENDRICKS;
FELDMANS MEDICAL CENTER PHARMACY, INC.; FCS PHARMACY LLC,

*Plaintiffs-Appellants,*

—v.—

INDEPENDENCE BLUE CROSS; QCC INSURANCE COMPANY; CAREFIRST, INC.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

ANTHONY J. PADUANO
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas,
  9th Floor
New York, New York 10020
(212) 785-9100

TIMOTHY S. COLE
MANTACOLE
500 Office Center Drive, Suite 400
Fort Washington, Pennsylvania 19034
(215) 352-1741

*Attorneys for Plaintiffs-Appellants
  Christopher Templin; Viola
  Hendricks; Feldmans Medical
  Center Pharmacy, Inc.; FCS
  Pharmacy LLC*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... ii

SUMMARY OF THE ARGUMENT ..................................................... 1

ARGUMENT ........................................................................................ 3

POINT I.    APPELLANTS ACHIEVED "SOME SUCCESS ON THE
MERITS" IN OBTAINING PAYMENT OF ALL INTEREST
OWED TO THEM ........................................................................ 3

    A. Appellants Have Not "Waived" Any Argument ..................... 4

    B. Appellants' Recovery of All Interest Owed to Them Is
"Some Success On the Merits" ................................................ 7

       1.   The Settlement Constituted "Success on the Merits" ....... 7

       2.   Appellees' Agreement to Pay All Interest Owed Here
Constituted "Success on the Merits" ............................. 11

    C. Appellants' Success Was Not "Trivial" ................................ 15

POINT II.    THE DISTRICT COURT ERRED AS A MATTER OF
LAW IN APPLYING CERTAIN *URSIC* FACTORS ................ 17

    A. Appellees are Culpable for Refusing to Pay the Interest
Due on Appellants' Concededly-Owed ERISA Benefits ...... 18

    B. An Award of Attorneys' Fees Would Deter Future
Misconduct and Thereby Benefit Other Plan Members ........ 19

    C. The Relative Merits of the Parties' Positions Favors
Appellants ............................................................................ 21

POINT III.   APPELLANTS ARE ENTITLED TO AN AWARD OF
ALL ATTORNEYS' FEES INCURRED IN OBTAINING
PAYMENT OF INTEREST ....................................................... 22

CONCLUSION ................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

Boyle v. Int'l Bhd. of Teamsters Local 863 Welfare Fund,
No. 11-3202, 2012 U.S. Dist. LEXIS 170330 (D.N.J. Nov. 30, 2012) .... 8, 9, 10, 13

Brytus v. Spang & Co.,
203 F.3d 238 (3d Cir. 2000) ............................................................... 15, 17

Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.,
532 U.S. 598 (2001) ..................................................................... 8, 9, 10

Capital Asset Research Corp. v. Finnegan,
216 F.3d 1268 (11th Cir. 2000) ................................................................ 24

Carlson v. HSBC-N. Am. (US) Retirement Income Plan,
542 F. App'x 2 (2d Cir. 2013) ........................................................ 15, 15n

Connolly v. Nat'l Sch. Bus Serv.,
177 F.3d 593 (7th Cir. 1999) ................................................................... 16

Davis v. Ennis,
520 F. Supp. 262 (N.D. Tex. 1981) ......................................................... 16

Donachie v. Liberty Life Assur. Co.,
745 F.3d 41 (2d Cir. 2014) ............................................................... 11, 21

Drazin v. Horizon Blue Cross Blue Shield of N.J., Inc.,
528 Fed. Appx. 211 (3d Cir. 2013) ................................................. passim

Fama v. Design Assistance Corp.,
520 F. App'x 119 (3d Cir. 2013) .................................................... 4n, 11

Farrar v. Hobby,
506 U.S. 103 (1992) ......................................................................... 16, 17

Feldman's Med. Ctr. Pharm., Inc. v. Carefirst, Inc.,
898 F. Supp. 2d 883 (D. Md. 2012) ....................................................... 16n

Glunt v. Life Ins. Co. of N. Am.,
No. 11-3105, 2012 U.S. Dist. LEXIS 35710 (E.D. Pa. Mar. 15, 2012) .................. 21

Hardt v. Reliance Std. Life Ins. Co.,
560 U.S. 242 (2010) .................................................................................. passim

Heim v. Life Ins. Co. of N. Am.,
No. 10-1567, 2012 U.S. Dist. LEXIS 59088 (E.D. Pa. Apr. 27, 2012)...................20

Int'l Union v. Yard-Man,
716 F.2d 1476 (6th Cir. 1983) ...................................................................6

Lima v. Newark Police Dep't,
658 F.3d 324 (3d Cir. 2011)...................................................................7

Locher v. UNUM Life Ins. Co. of Am.,
389 F.3d 288 (2d Cir. 2004).................................................................16

McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.,
33 F.3d 253 (3d Cir. 1994).................................................................18

Paramount Aviation Corp. v. Agusta,
178 F.3d 132 (3d Cir. 1999).................................................................24

Perelman v. Perelman,
No. 10-5622, 2014 U.S. Dist. LEXIS 51051 (E.D. Pa. Apr. 14, 2014)........ 9, 10, 11

Scarangella v. Group Health, Inc.,
731 F.3d 146 (2d Cir. 2013).................................................................. passim

Schwarzwaelder v. Merrill Lynch & Co.,
606 F. Supp. 2d 546 (W.D. Pa. 2009).....................................................20

Seborowski v. Pittsburgh Press Co.,
188 F.3d 163 (3d Cir. 1999).................................................................23

Taaffe v. Life Ins. Co. of N. Am.,
769 F. Supp. 2d 530 (S.D.N.Y. 2011) ...................................................5, 6

Templin v. Indep. Blue Cross,
487 F. App'x 6 (3d Cir. 2012) ................................................. 15, 19, 24n

Tomasko v. Ira H. Weinstock, P.C.,
255 F. App'x 676 (3d Cir. 2007) ........................................ 4n, 17, 18, 20

United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit
Auth.,
163 F.3d 341 (6th Cir. 1998) ...................................................................5

United Indus. Workers v. Gov't of the V.I.,
987 F.2d 162 (3d Cir. 1993)............................................................ 23, 24

United States v. Leidner,
99 F.3d 1423 (7th Cir. 1996) ..................................................................6

Ursic v. Bethlehem Mines,
719 F.2d 670 (3d Cir. 1983)........................................................... passim

## Other Authorities

29 U.S.C. § 1132(a)(1)(b) .....................................................................14

29 U.S.C. § 1132(a)(3)...........................................................................14

ERISA § 502(a)(1)(b) .............................................................................13

ERISA § 502(a)(3) ..................................................................................13

Fed. R. Civ. P. 8(d) ................................................................................24

Matthew Bender, Court Awarded Attorney's Fees, § 8.02 ....................12

# SUMMARY OF THE ARGUMENT

As set forth in Appellants' Opening Brief, the District Court committed errors of law in denying Appellants' motion for an award of attorneys' fees on the basis of their success in obtaining payment of all of the interest allowed to them by law on their claims against Appellees. The briefs submitted by Appellees fail to provide legal support for the District Court's reasoning, nor do they provide any other legitimate ground for the District Court's refusal to award Appellants their attorneys' fees.[1] The District Court should be reversed, and Appellants awarded their attorneys' fees incurred in obtaining interest on their claims, for three reasons.

First, the District Court erred in finding that Appellants did not achieve "some degree of success on the merits," the standard for an award of attorneys' fees under Hardt v. Reliance Std. Life Ins. Co., 560 U.S. 242 (2010). Beginning with the filing of their Second Amended Complaint in November 2010, Appellants sought to recover interest on the $2.2 million in claims that Appellees finally agreed to pay via a Court-ordered review process in October 2010, as much as three years after the claims were initially submitted. Appellees aggressively

---

[1] The brief of Defendants-Appellees Independence Blue Cross and QCC Insurance Company (collectively, "IBC"), is referred to herein as "IBC Br." The brief of Defendant-Appellee Carefirst of Maryland, Inc. ("Carefirst") is referred to herein as "Carefirst Br." References herein to "App. Br." are to Appellants' opening brief, dated May 5, 2014.

contested Appellants' demand for interest; they repeatedly took the position that Appellants were not entitled to be compensated *at all* for their lengthy delay in paying these concededly legitimate claims.

After more than two years of further litigation, Appellees finally reversed themselves and consented to pay, via settlement brokered by the District Court, the entire amount of interest due on those claims under the federal post-judgment interest statute. This reversal constitutes "some degree of success on the merits" for Appellants, and the District Court's finding that it does not is an error of law. In opposition, Appellees argue that "some success on the merits" requires a judicial decision, and thus cannot be achieved through a "voluntarily" settlement payment. That argument is contrary to the policy objectives underlying ERISA, the <u>Hardt</u> decision, and the recent authority of this Court and its sister Circuits, which have held that a negotiated settlement does satisfy the <u>Hardt</u> standard.

Second, the District Court used an incorrect legal standard in applying the factors set forth in <u>Ursic v. Bethlehem Mines</u>, 719 F.2d 670 (3d Cir. 1983). While accurately *stating* the five factors to be considered, the District Court misapplied the culpability, deterrence, and "benefit to other plan members" <u>Ursic</u> factors, and failed to conduct an appropriate analysis of the "relative merits" of the parties' positions, holding this factor to be "neutral" when in fact it strongly favored Appellants. As a result, the District Court effectively required Appellants

to demonstrate "exceptional circumstances" to justify an award of attorney's fees, a standard consistently rejected by courts in the wake of <u>Hardt</u>.

Finally, Appellees argue that the portion of Appellants' attorneys' fees incurred between November 2010 and June 2011 should be denied because – they claim – they were already rejected by this Court and the District Court. Appellees are incorrect. This Court's only pronouncement with respect to Appellants' prior application for attorneys' fees is that their June 2011 application for attorneys' fees was untimely. And the District Court held only that Appellants were not eligible for an award of attorneys' fees based on the payment of their underlying claims. Neither the decision of this Court nor the District Court's 2011 decision held that the attorneys' fees incurred prior to June 2011 were not recoverable in connection with Appellants' claim for interest, and neither precludes an award of those fees here.

## **ARGUMENT**

## **POINT I**

## **APPELLANTS ACHIEVED "SOME SUCCESS ON THE MERITS" IN OBTAINING PAYMENT OF ALL INTEREST OWED TO THEM**

Appellees press three reasons why their complete capitulation does not satisfy the <u>Hardt</u> standard, but each fails. First, IBC confusingly argues waiver, saying that because Appellants did not specifically refer to a "catalyst theory" in their previous papers, as they do in portions of the Opening Brief, all references to

3

"success on the merits" somehow are foreclosed.    IBC Br. 9-10.    Second, Appellees argue that Appellants' success in obtaining payment of all the interest possibly owed does not constitute "success on the merits" under Hardt because it was achieved through a negotiated settlement rather than through court order. Third, they argue that Appellants' success was "trivial" because, even though Appellees paid 100% of the amount owed, that amount was small relative to what Appellants sought on their separate claims based upon Maryland and Pennsylvania Prompt Payment statutes.    All three of these arguments are simply incorrect as a matter of law.[2]

### A.    Appellants Have Not "Waived" Any Argument

Appellants have taken the same position throughout the litigation of their claim for attorneys' fees: Appellants demonstrated "some success on the merits" as required by Hardt, by obtaining via settlement Appellees' payment of the full amount of interest owed to them under the federal post-judgment interest statute.    IBC argues that this position states a "catalyst theory" of attorney's fees,

---

[2]    Although the District Court's denial of an award of attorneys' fees is reviewed for abuse of discretion, this Court reviews *de novo* whether the District Court applied an incorrect legal standard in making that determination.    Fama v. Design Assistance Corp., 520 F. App'x 119, 122 (3d Cir. 2013); Tomasko v. Ira H. Weinstock, P.C., 255 F. App'x 676, 683 (3d Cir. 2007).    As is set forth below and in Appellants' opening brief, the District Court misapplied both the Hardt standard and the Ursic factors in denying Appellants' request for attorneys' fees.

and that Appellants should be deemed to have waived this argument because it was allegedly not raised below. This argument is frivolous.

IBC attempts to invent a distinction between cases decided under a "catalyst theory" and other cases where attorneys' fees were awarded pursuant to Hardt to a party who obtained a favorable settlement.  The case law does not support such a distinction, and IBC's argument is nothing more than a semantic effort to pigeonhole Appellants' position as a controversial theory, see *infra* Section B(1), or one that Appellants have previously "disclaimed."  It is neither.

Appellants' argument is, and has consistently been, this: an ERISA plaintiff achieves some success on the merits pursuant to Hardt where it "negotiate[s] a settlement" that resolves the plaintiffs' substantive claims as a result of litigation.  Drazin v. Horizon Blue Cross Blue Shield of N.J., Inc., 528 Fed. Appx. 211, 213, 215 (3d Cir. 2013).  See also Taaffe v. Life Ins. Co. of N. Am., 769 F. Supp. 2d 530, 541-42 (S.D.N.Y. 2011).  Consistent with this Court's discussion in Drazin, Appellants did not describe this argument below as a "catalyst theory," as other courts have.  See Scarangella v. Group Health, Inc., 731 F.3d 146, 154-55 (2d Cir. 2013).  But the name given to an argument below does not control whether the claim has been waived.  See, e.g., United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth., 163 F.3d 341, 360 n.9 (6th Cir. 1998) (argument not waived where "the parties' briefs

placed before the district court the validity of the policy under the overbreadth doctrine"); Int'l Union v. Yard-Man, 716 F.2d 1476, 1483 n.11 (6th Cir. 1983) (considering argument on appeal although "the words 'accord and satisfaction' were never utilized before the District Court"); cf. United States v. Leidner, 99 F.3d 1423, 1429 (7th Cir. 1996) (considering argument, although not specifically stated below, that was "arguably implicit within those arguments that were raised"). Whether categorized as a "catalyst theory" (as in Scarangella) or as an ordinary application of Hardt, as in Drazin or Taaffe, Appellants' seek fees here based on precisely the same theory put forth in the District Court.

Appellees are well aware of this. Indeed, although it now strategically claims otherwise, IBC stated in its briefing below that Appellants were "attempting to rely upon a purported 'catalyst' theory." A-996 (D.E. 161) at 1. It is only through disingenuous, highly selective quotation that IBC can even imply that Appellants "disclaimed" the argument that Appellees characterize as the "catalyst theory" below. *See* IBC Br. 9-10. Rather, as the briefing misleadingly excerpted by IBC demonstrates, Appellant argued below that IBC's reliance on various pre-Hardt cases *rejecting* the "catalyst theory" had been rendered irrelevant by Hardt and Drazin. See A-1019 ("discussion of *IBC's catalyst theory defense* largely irrelevant" because "the Third Circuit has recently made quite clear that a Plaintiff meets the [Hardt standard] where counsel has negotiated a settlement of an ERISA

6

plaintiffs' claims after the commencement of litigation.") (citing Drazin); A-1022 (IBC's arguments that "the 'catalyst theory' of recovery may not be properly advanced in an ERISA context" ignored Drazin).

In a striking example of cognitive dissonance, IBC's own brief claims that "[t]he District Court rejected plaintiffs' catalyst theory" (i.e., the theory that they contend Appellants "disclaimed" below). IBC Br. 5. Similarly, Carefirst acknowledges that Appellants "relied on Scarangella" in arguing that the settlement entitled them to attorneys' fees, an argument described by Scarangella as a "catalyst theory." Carefirst Br. 28. These statements confirm that Appellants' argument was before the District Court, and thus is not waived here.

**B.    Appellants' Recovery of All Interest Owed to Them Is "Some Success On the Merits"**

*1.    The Settlement Here Constituted "Success on the Merits"*

Appellees tellingly do not dispute that, where a party's litigation leads to the successful settlement of substantive claims, that party has achieved "some success on the merits" and may be awarded its attorneys' fees. Drazin, 528 F. App'x at 215; see Lima v. Newark Police Dep't, 658 F.3d 324, 332-33 (3d Cir. 2011) ("The fact that a party prevailed through a settlement rather than through litigation does not weaken her claim to fees."). Indeed, Appellees do not engage Drazin at all. Carefirst cites Drazin only for an unrelated point concerning the standard of review, Carefirst Br. 26 & 39, while IBC notes in a footnote that the

District Court distinguished it, IBC Br. 20 n.9, but makes no attempt to defend the District Court's indefensible analysis.   Both Appellees ignore that the <u>Drazin</u> district court awarded attorneys' fees based on a successful result obtained via settlement.   528 F. App'x at 213.   This Court affirmed the district court's decision to give 100% of those fees to the attorney who negotiated the settlement, and none to the appellant, who had not.  <u>Id</u>. at 215.

Appellees assert that this Court can only find that Appellants achieved "some success on the merits" if it adopts the "catalyst" theory, which, they argue, it should not do.   IBC Br. 9-10; Carefirst Br. 27-28.   As <u>Drazin</u> makes clear, Appellees are incorrect.  As defined by the cases on which Appellees rely, <u>Boyle v. Int'l Bhd. of Teamsters Local 863 Welfare Fund</u>, No. 11-3202, 2012 U.S. Dist. LEXIS 170330 (D.N.J. Nov. 30, 2012) and <u>Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S. 598, 624 (2001), the "catalyst theory" permits an award of attorneys' fees to a party who "achieves its desired result because the lawsuit brought about a voluntary change in the defendant's conduct." 532 U.S. at 600.   In <u>Buckhannon</u>, the Supreme Court held that the "catalyst theory" did not satisfy the "prevailing party" standard for an award of attorneys' fees pursuant to the Fair Housing Amendments Act.  <u>Id</u>. at 605.  Courts in this Circuit are divided on the question of whether the "catalyst theory" satisfies the less stringent "some success on the merits" standard for an award of attorneys'

fees under ERISA.  Perelman v. Perelman, No. 10-5622, 2014 U.S. Dist. LEXIS 51051, *6 (E.D. Pa. Apr. 14, 2014) (approving the catalyst theory); Boyle, 2012 U.S. Dist. LEXIS 170330 (rejecting the catalyst theory).

The Court need not decide that question, because Appellants' success here was the direct result of the settlement of their litigated claims thus satisfied Drazin.  Both Boyle and Perelman involved a change in position extrinsic to the litigation, not a settlement negotiated by counsel.  In Boyle, the defendant fund *unilaterally* restored benefits that it had ceased paying and reimbursed the beneficiaries for any expenses incurred during the gap period.  2012 U.S. Dist. LEXIS 170330 at *3.  In Perelman, the plan *unilaterally* replaced its trustees and amended an indemnity provision that the plaintiff had argued was illegal.  2014 U.S. Dist. LEXIS 51051 at *9-10.  Similarly, in Buckhannon, the West Virginia legislature – *not a party to the litigation* – repealed the rule that was the subject of plaintiffs' suit while the case was pending.  532 U.S. at 624.  Significantly, in none of these cases was the change of conduct the result of an agreement with the plaintiffs to settle the pending litigation.  Rather, in each case, the plaintiffs argued that the existence of the litigation "contribut[ed] in bringing about" the voluntary change.  Boyle, 2012 U.S. Dist. LEXIS 170330 at *27.

By contrast, here, as in Scarangella, Appellants' success was achieved through a negotiated settlement of Appellants' litigated claims, not unilateral

9

action by Appellees.  As the Court recognized in <u>Drazin</u>, the favorable settlement of substantive claims does constitute "some success on the merits" and a settling plaintiff may be awarded its attorneys' fees.  528 F. App'x at 215 (affirming District Court decision that had awarded fees to counsel for settling class plaintiffs, but not to counsel in parallel action who had "neither won its case nor negotiated a settlement for its clients").  In trying to fit into the mold of <u>Boyle</u> or even <u>Perelman</u>, Appellees fail to recognize this key difference; they paid Appellants' interest within the context of this hard-fought litigation, not outside of it.

Even if this Court were to determine that the "catalyst theory" is the proper lens for considering Appellants' application for attorneys' fees, the Court should reject Appellees' argument that the catalyst theory cannot be used to establish "some success on the merits" under <u>Hardt</u>.  In effect, Appellees ask the Court to conclude that <u>Hardt</u> changed nothing, and that <u>Buckhannon</u>'s rejection of the "catalyst theory" for "prevailing party cases" applies unchanged to the less stringent "some success on the merits" standard that, pursuant to <u>Hardt</u>, governs in ERISA cases.  IBC Br. 20; Carefirst Br. 35-36 (citing <u>Boyle</u>, 2012 U.S. Dist. LEXIS 170330 at *29-30).  That conclusion was rejected by the district court in <u>Perelman</u>, which viewed <u>Hardt</u>'s adoption of the less stringent requirement of "some success on the merits" for ERISA cases as rejecting <u>Buckhannon</u>'s requirement that "success" be the result of a judicial decision.  2014 U.S. Dist.

LEXIS 51051 at *15-16. If the Court elects to reach the question here, it should follow Perelman.

### 2. Appellees' Agreement to Pay All Interest Owed Constituted "Success on the Merits"

Appellees next argue that their decision to settle this action by paying all of the interest owed to Appellants pursuant to the federal post-judgment interest statute was unrelated to the "merits" of Appellants' claim. The record establishes otherwise. First, despite Appellees' insinuations, see Carefirst Br. 33, IBC Br. 17, the District Court did *not* hold that its statements were not the cause of Appellee's decision to settle. Rather, the District Court expressly declined to draw such a conclusion, stating only that it "will not speculate" as to why Appellees settled. A-18. The District Court's refusal to address a central question of the Hardt analysis – whether the settlement was "on the merits" – was a reversible error of law, Donachie v. Liberty Life Assur. Co., 745 F.3d 41, 46 (2d Cir. 2014) ("[W]hether a plaintiff has obtained some degree of success on the merits is the sole factor that a court *must* consider in exercising its discretion.") (emphasis in original), to which a *de novo* review applies. Fama v. Design Assistance Corp., 520 F. App'x 119, 122 (3d Cir. 2013). See Scarangella, 731 F.3d at 155 (remanding for determination of "the reason for GHI's dismissal of [its] remaining causes of action").

Even after approving Appellants' underlying claims in October 2010, after more than a year of litigation, Appellees refused to pay interest on those claims for another two-and-a-half years. Substantial litigation ensued, and Appellees changed their position *only* after the District Court indicated – albeit with the reservation that it was not at that moment ruling on the issue – that it would likely award interest if it were to decide that issue. A-652–A-653 & A-668. The timeline makes indisputable that absent the Second Amended Complaint, and Appellants' successful appeal to this Court of the District Court's dismissal of that complaint, Appellees would not have paid the interest to which Appellants were entitled. See Matthew Bender, Court Awarded Attorney's Fees, § 8.02 (if "defendant had ample opportunity to remedy the plaintiff's grievances, but did so only after the suit was filed, causation was properly inferred."). IBC, at least, concedes this much.[3] A-772; see App. Br. 26 n.3.

Appellees argue that their sudden reversal and agreement to pay interest nonetheless does not satisfy Hardt because it was not the result of direct

---

[3]  Carefirst asserts that it "offered to pay interest" at the rate ultimately awarded before the January 30, 2013 hearing. Carefirst Br. 33-34. But the record refutes that assertion. In fact, Carefirst *never* made an offer to Appellants. Id. at 19 (If Appellants agreed to payment of interest at federal rate, Carefirst would consider "making a counter-proposal"). And any such "counter-proposal" was expressly made conditional on Appellants' waiving their right to seek attorneys' fees. Id.; A-981-83 (D.E. 156-1) (Affidavit of Anthony Paduano in Further Support of Plaintiffs' Motion for Attorneys' Fees, dated May 16, 2013) ¶¶ 10-11.

"judicial action" by the court.  Carefirst Br. 29-30; IBC Br. 22 (quoting Boyle, 2012 U.S. Dist. LEXIS 170330 at *29).  First, while Appellees do not explain precisely what they understand "judicial action" to mean in this context, this Court's precedent establishes that a negotiated settlement of a litigated dispute satisfies Hardt.  Drazin, 832 F. Supp. 2d at 442.  Second, to the extent some additional "judicial action" is required – and Drazin suggests that it is not – the developments in this action, including:

- Appellants' filing of the Second Amendment Complaint;
- The reversal and remand by this Court of the District Court's decision dismissing the Second Amended Complaint, which indicated that prejudgment interest could be available under ERISA § 502(a)(1)(b) and certainly under §502(a)(3). 487 F. App'x at 12 n.10;
- The briefing and arguing of the issue of prejudgment interest in the District Court; and finally;
- the January 30, 2013 hearing, during which the District Court allowed Appellants to file a Third Amended Complaint seeking interest under Section 502(a)(3), and provided its preliminary views on the merits of that claim,

easily satisfy any such requirement.  Scarangella, 731 F.3d at 155.  Appellees try to distinguish Scarangella on the grounds that the settlement there followed a summary judgment motion.  Carefirst Br. 29-30; IBC Br. 18, 22.  What Appellees miss, however, is that it was not the resolution of that motion that drove the settlement in Scarangella, but the court's "tentative analysis," in dicta, of the claims that remained.  731 F.3d at 155.  The present case differs only in that the

District Court's analysis here was provided orally in open court rather than in a written decision – a difference of no substantive significance.

IBC's additional arguments – in which Carefirst does not join – are red herrings. First, IBC notes that Appellants "failed to exhaust their administrative remedies *before filing suit*," IBC Br. 24-25 (emphasis added), and so are barred "from later recovering attorneys' fees." Id. But Appellants do not seek fees on their underlying claims, and Appellants *did* exhaust their administrative remedies, by engaging in the administrative process ordered by the District Court, before seeking to compel IBC to pay *interest* on those claims. Second, IBC cites several cases against government agencies (all applying the stricter "prevailing party" standard), Id. at 26-27, in which there was evidence that the change in government policy predated or was extrinsic to the litigation. IBC cannot, and does not, claim that its decision to pay interest was "in the works" before Appellants sought to compel that payment, nor that its ultimate agreement to pay interest was unrelated to this litigation, so the cases it cites are not relevant. Third, IBC argues that Appellants' claim for fees was "frivolous." Id. at 27-28. The District Court's statement at the January 30, 2013 hearing that "I believe interest would be allowable," A-653, and this Court's recognition that interest may properly be sought under 29 U.S.C. § 1132(a)(3), if not section 1132(a)(1)(b); see

14

Templin v. Indep. Blue Cross, 487 F. App'x 6, 12 n.10 (3d Cir. 2012), confirms that Appellants had, at the very least, a colorable right to interest.

### C.    Appellants' Success Was Not "Trivial"

Appellees argue that, although Appellants recovered 100% of the interest due under the federal post-judgment interest statute, this success is "trivial" because Appellants did not recover interest based on state statutes sought alternatively in their complaint.  Appellees are wrong.  See Carlson v. HSBC-N. Am. (US) Retirement Income Plan, 542 F. App'x 2, 7-8 (2d Cir. 2013).[4] Appellants achieved complete recovery on their claim for interest under ERISA. That Appellants also put forth alternative methods under state law for calculating interest does not negate that success.  To hold otherwise would be to penalize a party admittedly harmed by an ERISA violation for offering alternative calculations of damages.  The purpose of ERISA's fee shifting provision is to "encourage private enforcement of the statutory substantive rights" created by ERISA.    Brytus v. Spang & Co., 203 F.3d 238, 242 (3d Cir. 2000).  An interpretation of that provision that would provide a disincentive to private

---

[4]  Carefirst argues that Carlson is inapplicable because plaintiffs received "the benefits, including interest," they had sought.  Carefirst Br. 41.  Carefirst oddly asserts that this is "substantially more success than [Appellants]."  Id.  On the contrary, Appellants have also received, via Court-ordered review in 2010 and settlement payment in 2013, all of the benefits they sought in this action, and interest on the same.  That Appellants received this relief in two stages – and here seek attorneys' fees only for the second of these – hardly makes their complete success on interest "trivial."

enforcement should therefore be avoided.  Locher v. UNUM Life Ins. Co. of Am.,
389 F.3d 288, 298 (2d Cir. 2004) ("ERISA's attorney's fee provisions must be
liberally construed.").[5]

In support of its position that Appellants' success was "trivial," IBC
cites Farrar v. Hobby, in which the Supreme Court held that a plaintiff who
recovered only nominal damages on a Civil Rights Act claim should not be
awarded attorneys' fees.  506 U.S. 103, 115 (1992).  Farrar, however, supports
Appellants' position.  The Supreme Court expressly held that a plaintiff who
recovers nominal damages *is* a "prevailing party," Id. at 112, but concluded that
the "reasonable" award to such a party, who had suffered no compensable injury,
was none. Id. at 115.  If, as Farrar held, an award of nominal damages satisfies the
"prevailing party" standard, it then necessarily clears the lower bar of "some
success on the merits."  See Davis v. Ennis, 520 F. Supp. 262, 265 (N.D. Tex.
1981) ("It is well established that a plaintiff must have some success on the merits
to be a 'prevailing party.'"); Connolly v. Nat'l Sch. Bus Serv., 177 F.3d at 593,
595 (7th Cir.1999) ("A plaintiff who has settled a case is considered a prevailing
party if she has achieved some success on the merits *and* . . .").  Moreover,

---

[5]   Appellees rely heavily on the decision in a separate case involving several of
      the parties here.  Feldman's Med. Ctr. Pharm., Inc v. Carefirst, Inc., 898
      F. Supp. 2d 883 (D. Md. 2012).  The opinion of a District Court sitting in
      another Circuit, involving different factual claims and a different State's law, is
      not controlling authority in this Court, and Appellees do not pretend otherwise.

Appellants' recovery here was not "nominal," let alone "Pyrrhic." See Farrar, 506 U.S. at 117. Rather, Appellants received the entire amount of interest they were owed under ERISA. Accordingly, even under Farrar, the District Court's determination that the amount of Appellants' recovery did not satisfy the "some degree of success on the merits" standard of Hardt is clearly erroneous and must be reversed.

## POINT II

### THE DISTRICT COURT ERRED AS A MATTER OF LAW IN APPLYING CERTAIN *URSIC* FACTORS

Appellants do not argue that the District Court's decision to use the Ursic factors was error, as Appellees suggest. Carefirst Br. 43. Rather, Appellants argue that the District Court abused its discretion by misapplying the Ursic factors. Contrary to IBC's suggestion, IBC Br. 30, there is no requirement that a plaintiff show "exceptional circumstances" in order to be awarded attorneys' fees under Hardt. Tomasko v. Ira H. Weinstock, P.C., 255 F. App'x 676, 680 (3d Cir. 2007). On the contrary, "the defendant in an ERISA action usually bears the burden of attorney's fees for the prevailing plaintiff or plaintiff class, thus encouraging private enforcement of the statutory substantive rights . . . through the judicial process" Id.; Brytus v. Spang & Co., 203 F.3d 238, 242 (3d Cir. 2000). Although purporting to apply the Ursic factors, the District Court in fact misapplied them by

17

ignoring this principle and requiring Appellants to demonstrate "exceptional circumstances."

### A.    Appellees are Culpable for Refusing to Pay the Interest Due on Appellants' Concededly-Owed ERISA Benefits

Appellees admit that the District Court resolved the first <u>Ursic</u> factor against Appellants solely on the basis of its finding that Appellees were not "solely culpable for delays *in the litigation*" or "in not *originally* paying the claim." A-20 (emphasis added); <u>see</u> Carefirst Br. 47; IBC Br. 30-31.  This was error.  Only culpable conduct that has "a direct bearing on the plaintiff's obtaining, or the defendant's withholding, *of the ERISA benefits at issue*" may be considered in connection with this <u>Ursic</u> factor.  <u>Tomasko</u>, 255 F. App'x at 681-82 (emphasis added).

Here, the only "ERISA benefit[] at issue" was Appellants' entitlement to interest for Appellees' belated payment of their claims.  Appellants do not seek attorneys' fees on their underlying claims.  Indeed, as Appellees themselves have pointed out, the District Court denied Appellants' prior motion for attorneys' fees on those claims.  IBC Br. 7; Carefirst Br. 17.  Thus, those claims are not "at issue" on the instant motion.  Because the District Court improperly considered "culpability" with regard to the underlying claims in assessing this factor, its decision must be reversed.  <u>McPherson v. Employees' Pension Plan of Am. Re-Ins. Co.</u>, 33 F.3d 253, 256 (3d Cir. 1994).

18

Apparently recognizing that it cannot rely on conduct in connection with the underlying claims in its response on this factor, Carefirst (but not IBC) argues that Appellants were "culpable" in respect of the interest issue as well because Appellant allegedly rejected an offer of complete relief.  Carefirst Br. 48. As noted above (see supra p.12 n.3) the record does not support the assertion that Carefirst ever "offered" to pay interest in any amount or that Appellants rejected any such offer.[6]

Appellees are culpable here because, after "delay[ing] approval of [Appellants'] claims for years without explanation," Templin, 487 F. App'x at 15; see A-20, and even after conceding that those claims were in fact valid and payable, they nonetheless refused for more than two years to compensate Appellants for their unjustifiable delay (by paying interest).  The District Court's holding that this factor weighed against an award of attorneys' fees was therefore error, and should be reversed.

### B.  An Award of Attorneys' Fees Would Deter Future Misconduct and Thereby Benefit Other Plan Members

As IBC recognizes, the "deterrence of future conduct" and "benefit to other plan members" Ursic factors are "often considered together," IBC Br. 32, and support an award of fees where such an award would deter future misconduct and

---

[6]  Even if it were somehow construed as an offer of payment in full, the record establishes that Carefirst's "offer" included a demand that Appellants waive their right to seek attorneys' fees.  Id.

benefit other plan members.  Here, an award of fees would deter Appellees, and other similarly situated parties, from forcing insureds to litigate their right to recover interest where their undisputedly valid claims are belatedly paid.  As courts in this Circuit have held, such conduct causes "a significant drain on limited judicial resources" and imposes significant cost on litigants.  Schwarzwaelder v. Merrill Lynch & Co., 606 F. Supp. 2d 546, 570 (W.D. Pa. 2009); Heim v. Life Ins. Co. of N. Am., No. 10-1567, 2012 U.S. Dist. LEXIS 59088, *4-5 (E.D. Pa. Apr. 27, 2012).

IBC's response is to assert that this factor is "minimally relevant" where IBC's conduct was not "culpable."  IBC Br. 32.  First, as noted above and more fully in Appellants' Opening Brief, IBC's conduct *was* culpable.  But even if IBC was correct, a finding that this factor is "minimally relevant" would not counsel against an award; at most, it would render this factor neutral and shift the analysis to the remaining factors.

Similarly, by finding that this factor benefits Appellees because the deterrent effect of an award is "speculative," the District Court improperly applied a presumption against a fee award.  Tomasko, 255 F. App'x at 680 (rejecting "presumption that prevailing plaintiffs are not entitled to attorney's fees absent exceptional circumstances").  Thus, if there were really no basis for assessing the deterrent effect of an award here, this factor would be neutral.  In fact, however, it

can generally be presumed that an award of fees would deter wrongful conduct and thus benefit other plan members.  <u>See</u> <u>Glunt v. Life Ins. Co. of N. Am.</u>, No. 11-3105, 2012 U.S. Dist. LEXIS 35710, *10 (E.D. Pa. Mar. 15, 2012) ("the facts in this case are not so unique that other plan members would not benefit from an award of attorneys' fees in this case.").  That is certainly the case here.  As there is here no finding that there would be *no* deterrent effect, nor any basis for such a finding, the District Court's conclusion that this factor weighed against an award of attorneys' fees was error and should be reversed.

### C.    <u>The Relative Merits of the Parties' Positions Favors Appellants</u>

Carefirst argues that "there is nothing wrong with a district court concluding that an <u>Ursic</u> factor is neutral."  Carefirst Br. 52; <u>see</u> IBC Br. 33.  That is true, however, only if the district court actually weighed that factor.  <u>Donachie v. Liberty Life Assur. Co.</u>, 745 F.3d 41, 47 (2d Cir. 2014) ("A court cannot selectively consider some factors while ignoring others.").  Here, the District Court deemed this factor neutral because "the Court never adjudicated the merits of the parties' positions."  A-22.  The <u>Ursic</u> analysis *requires* the District Court to assess the merits of the parties' positions as part of the exercise of its jurisdiction.  In refusing to do so, "the District Court committed an error of law, and, therefore, abused its discretion."  <u>Donachie</u>, 745 F.3d at 47.

If the District Court had assessed the parties' positions, it necessarily would have found that this factor favors Appellants, because there was *no merit* to Appellees' refusal to pay the interest due on the approved claims. As if to confirm the point, Carefirst tries to rewrite history, denying that it ever refused to pay interest. Carefirst Br. 53. Carefirst's own filings in the District Court demonstrate that this was not the case. Carefirst Brief in Opposition to Plaintiffs' Motion for Prejudgment Interest (A-544, D.E. 122) at 17-19 (arguing that "there is no reasoned basis for an award of discretionary prejudgment interest under ERISA as against CareFirst").

The District Court thus erred as a matter of law in finding that this factor did not weigh in favor of an award of attorneys' fees. Because this Court reviews *de novo* the legal standard applicable to the determination of this factor, it can and should decide that this factor favors Appellants.

## POINT III

### APPELLANTS ARE ENTITLED TO AN AWARD OF ALL ATTORNEYS' FEES INCURRED IN OBTAINING PAYMENT OF INTERERST

IBC argues that Appellants are not entitled to be awarded that portion of their attorneys' fees that was incurred between November 2010 and June 2011 because "the District Court previously denied" a request for fees incurred during that period "on procedural and substantive grounds." IBC Br. 7-8. As noted in Appellants' Opening Brief, App. Br. 41, Appellants' prior motion for

fees was based on their success on the underlying claims for reimbursement.  Here,
by contrast, Appellants seek attorneys' fees for their success in obtaining payment
of interest.  The District Court's prior decision denying Appellants' request for
attorneys' fees on their underlying claims does not preclude – legally or logically –
a determination that they are entitled to all attorneys' fees incurred in connection
with their successful claim for interest.[7]

The District Court's prior decision denying attorneys' fees has no
preclusive effect on the present motion.  For a prior decision to have preclusive
effect, "the issue decided in the prior adjudication must be *identical* to the one
presented in the later action."  Seborowski v. Pittsburgh Press Co., 188 F.3d 163,
169 (3d Cir. 1999) (emphasis added); United Indus. Workers v. Gov't of the V.I.,
987 F.2d 162, 169 (3d Cir. 1993) (issue preclusion "is inappropriate in the absence
of precise factual correspondence").  In its prior decision on attorneys' fees, the
District Court held that Appellants did not achieve "some success on the merits" in
obtaining payment of their underlying claims.  Regardless of whether that holding

---

[7] As previously noted, App. Br. 41, Appellants' attorneys' fees incurred
beginning with the filing of the Second Amended Complaint are attributable to
Appellants' interest claim, because it was that filing that began the sequence of
events by which Appellees ultimately paid Appellants the interest they were
owed.

was correct when made,[8]  whether Appellants demonstrated "some success on the merits" by achieving payment of their claim for *interest* almost two years later is plainly not the same question.   Cf. United Indus. Workers, 987 F.2d at 169 (decision interpreting prior version of agreement not entitled to preclusive effect on interpretation of later version of same agreement).

In effect, Appellees suggest that once a party has been denied certain relief, on whatever ground, that party is forever barred from being awarded the same relief on a separate claim, even though the former denial is not preclusive of the latter claim.   Appellees identify no authority for this proposition, which is contrary to several long-recognized principles of jurisprudence, including the long-authorized practice of pleading in the alternative.   Fed. R. Civ. P. 8(d); cf., e.g., Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 147 (3d Cir. 1999) (district court denied defendant's account stated counterclaim, but granted identical relief on breach of contract claims); Capital Asset Research Corp. v. Finnegan, 216 F.3d 1268, 1269 (11th Cir. 2000) (district court denied plaintiff's breach of contract claims, but awarded on its statutory claim "all of the relief that it could have received had it prevailed" on the contract claims).

---

[8]   This Court upheld the denial of attorneys' fees to Appellants only on the ground that the motion was untimely and did not reach the substantive question of whether Appellants achieved "some success." Templin, 487 F. App'x at 13.

The District Court failed to consider whether its prior decision was in fact preclusive of Appellants' claim for attorneys' fees incurred prior to June 30, 2011, in connection with their claim for interest. Accordingly, its bare statement that it "need not consider" Appellants' claim, A-10 at n.3, was error. In fact, as explained *supra*, Appellants' are entitled to *all* of their attorneys' fees incurred in obtaining payment of the interest they were owed, including those fees incurred prior to June 30, 2011, and this Court should hold that fees from the entire period sought may be awarded to Appellants on remand.

## CONCLUSION

For the reasons set forth above, this Court should reverse the November 14, 2013 Order of the District Court that denied Appellants' application for attorneys' fees and remand this case to the District Court for a determination of the amount of fees to which Appellants are entitled.

Dated:  New York, New York
        June 18, 2014

By: /s/ Anthony Paduano
     Anthony Paduano
     PADUANO & WEINTRAUB LLP
     1251 Avenue of the Americas
     Ninth Floor
     New York, New York 10020
     Telephone: (212) 785-9100
     Facsimile:  (212) 785-9099

Timothy S. Cole
MANTACOLE, LLC
500 Office Center Drive, Suite 400
Fort Washington, Pennsylvania 19034
Telephone: (215) 325-1741
Facsimile:  (215) 641-0469

25

## <u>COMBINED CERTIFICATIONS</u>

**I.**     **<u>Certificate of Bar Membership</u>**

I am a member of the bar of this Court.

**II.**     **<u>Certification of Compliance</u>**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,022 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, 14-point Times New Roman style.

**III.**     **<u>Certificate Regarding Identical PDF and Hard Copies</u>**

The text of the electronic brief is identical to the text in the paper copies.

**IV.**     **<u>Certificate Regarding Virus Scan</u>**

The attached electronic brief was scanned using Symantec Endpoint and no virus was detected.

/s/ Anthony Paduano
Anthony Paduano

*Attorney for Plaintiffs-Appellants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 18, 2014, I served Appellants' Brief upon counsel for Appellees Independence Blue Cross, QCC Insurance and CareFirst, Inc. through the Third Circuit Court of Appeal's ECF system, via email and regular mail on the following:

Katherine M. Katchen
Matthew R. Varzally
Akin Gump Strauss Hauer & Feld LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, Pennsylvania 19103-7013
kkatchen@akingump.com
mvarzally@akingump.com

*Attorneys for Appellees*
*Independence Blue Cross and QCC Insurance*

Mark J. Oberstaedt
Archer & Greiner
One Centennial Square
Haddonfield, New Jersey 08033
moberstaedt@archerlaw.com

*Attorneys for Appellee CareFirst, Inc.*

/s/ Anthony Paduano
Anthony Paduano